```
 1  DEBRA W. YANG
    United States Attorney
 2  LEON W. WEIDMAN
    Assistant United States Attorney
 3  Chief, Civil Division
    GWENDOLYN M. GAMBLE (State Bar No. 143267)
 4  Assistant United States Attorney

 5       Room 7516, Federal Building
         300 North Los Angeles Street
 6       Los Angeles, California 90012
         Telephone:  (213) 894-6684
 7       Fax:        (213) 894-7819

 8  Attorney for Defendants
    COL. ROBERT M. WORLEY, II, Base
 9  Commander of Vandenberg Air Force Base
    and UNITED STATES AIR FORCE
10
```

FILED
CLERK, U.S. DISTRICT COURT
MAR 1 2 2003
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Priority ___
Send ✓
Enter ___
Closed ___
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only ___

LODGED
CLERK, U.S. DISTRICT COURT
MAR - 4 2003
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| VANDENBERG ACTION COALITION, et al.<br><br>Plaintiffs,<br><br>v.<br><br>COL. ROBERT M. WORLEY, et al.<br><br>Defendants. | No. CV 01-10526 RSWL (RCx)<br><br>**AMENDED STATEMENT OF**<br><br>**UNCONTROVERTED FACTS AND**<br><br>**CONCLUSIONS OF LAW**<br><br>[~~PROPOSED~~]<br><br>Hearing Date: February 10, 2003<br><br>Honorable Ronald S.W. Lew |

Defendants' Motion for Summary Judgment having come on for hearing, and the Court having considered the pleadings, evidence presented, and memorandum of points and authorities, the Court makes the following Findings of Fact and Conclusions of Law:



I.

**FINDINGS OF FACT**

1. The United States Army acquired the land on which Vandenberg Air Force Base ("VAFB") is located in the early 1940's. Exhibit 4. The land was subsequently transferred to the United States Air Force ("Air Force") in the 1950's. Id.

2. The Air Force granted an easement to the County of Santa Barbara for a right of way over certain roads located on land owned by the Air Force. Exhibit 5.

3. VAFB is a military installation with presidentially directed military missions of space launch and missile testing. Declaration of Colonel Stephen Lanning ("Lanning Decl.") ¶ 2.

4. The area outside the main gate of VAFB consists of two types of jurisdiction: 1) exclusive federal jurisdiction where the federal government has sole jurisdicition and 2) concurrent jurisdiction where the federal and state governments both maintain jurisdiction to enforce laws. Id. at ¶ 3.

5. The general public is not authorized to enter the exclusive federal jurisdiction side of VAFB without a pass or permission from the Installation Commander or his designee. Lanning Decl. ¶ 2.

6. A painted green line on the pavement near the main gate marks the legal delineation between concurrent jurisdiction and exclusive federal jurisdiction. Id. at ¶ 4; photograph attached to Declaration of Michelle Miranda ("Miranda Decl."); plaintiffs' responses to defendants' Requests for Admission, Nos. 10-12; plaintiffs' responses to defendants' Interrogatories, No. 18.

7. The main gate of VAFB is located behind the exclusive

1  federal jurisdiction line to provide a security buffer zone between
2  the green line and the main gate. Lanning Decl. ¶ 5.
3      8. During protests that occurred prior to March 2001, some
4  protesters parked on the shoulder or grassy areas adjacent to the main
5  base on Lompoc-Casmalia Rd. and California Highway 1 (HWY 1). Id. at
6  ¶ 8.
7      9. These roads are located in the concurrent jurisdiction area
8  where both the federal and state government maintain jurisdiction to
9  enforce laws. Id.
10     10. VAFB Installation Commander Colonel Stephen L. Lanning
11 directed on May 16, 2001 that "no parking signs" be posted along
12 Lompoc-Casmalia Rd. and HWY 1 because 1) Lompoc-Casmalia Rd. and HWY
13 1 have heavy traffic which created safety issues for both vehicular
14 traffic and protesters who attempted to exit and enter parked
15 vehicles, 2) dry grasses and chaparral lining these roads are
16 flammable and presented a danger of igniting where vehicles parked on
17 or near unpaved areas, and 3) in light of increased Department of
18 Defense (DoD) and Air Force reemphasis on force protection and anti-
19 terrorism measures, it was important that VAFB take measures to secure
20 the safety and welfare of DoD personnel, as well as protect the
21 resources and infrastructure located on DoD installations. Id. at ¶
22 8-10; Exhibit 3.
23     11. Col. Lanning directed that parking be made available for
24 protesters in a parking lot across the street from the VAFB main gate,
25 which is located within exclusive federal jurisdiction. Lanning Decl.
26 ¶ 11.
27     12. It is less than 150 yards from the parking lot to the

protest areas used in demonstrations near the main gate. Id.

13. There are over 100 parking spaces available for protestors at the parking lot and an adjacent overflow field. Id. at ¶ 12.

14. In the event that the parking lot were ever full, the base was prepared to make accommodations for the overflow. Id. Col. Lanning designated an open field located in exclusive federal jurisdiction, across from HWY 1 approximately 50 yards from the protest areas for this purpose. Id.

15. Prior to the May 2001 protest, Col. Lanning directed that snow fencing be erected to assist in preventing trespassing on VAFB property located within exclusive federal jurisdiction because trespassing is a threat to the security of VAFB and its mission. Lanning Decl. ¶ 14; photographs attached to Miranda Decl.

16. The fencing is an enhancement of the VAFB green line, crossing over which constitutes trespassing. Lanning Decl. ¶ 14.

17. The fencing serves as a clear visual delineation for protestors and law enforcement as to what constitutes the area of exclusive federal jurisdiction. Id.; plaintiffs' responses to defendants' Requests for Admission, Nos. 10-12; plaintiffs' responses to defendants' Interrogatories, No. 18.

18. The fencing identifies a reference point for federal, state and local law enforcement as far as which agency arrests/detains individuals for various offenses and which agency has responsibility for crowd control and security for VAFB. Lanning Decl. at ¶¶ 6-7 and 14; Exhibits 1-2.

19. The fencing is located approximately 17 feet south of HWY 1. Miranda Decl. ¶ 3.

20. Plaintiffs are able to protest in an area near the main gate which is approximately 17 feet deep and at least a hundred yards wide. Miranda Decl. and photographs attached thereto.

Any statement of Uncontroverted facts erroneously designated as a conclusion of law is incorporated herein.

## II.

### CONCLUSIONS OF LAW

To withstand summary judgment, the non-moving party must show that there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party. If the factual context makes the non-moving party's claim <u>implausible</u>, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 106 S.Ct. 2548, 2552-53 (1986).

The judicial power vested in the federal courts by Article III of the United States Constitution extends only to actual 'cases' and 'controversies.' <u>Steel Co. v. Citizens for a Better Environment</u>, 523 U.S. 83, 100 (1998); <u>Valeria v. Wilson</u>, 12 F.Supp.2d 1007, 1015 (N.D.Cal. 1998). Standing is a critical jurisdictional limitation on a party's ability to bring suit.

It is "an essential and unchanging part of the case-or-controversy requirement of Article III" of the United States Constitution. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992). Parties who do not have Article III standing may not litigate in Federal Court. <u>Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.</u>, 454 U.S. 464, 475-476.

To have standing to sue and to be able to satisfy the requirements for bringing a declaratory relief action, plaintiffs must have a "case or controversy" within the meaning of Article III and the Declaratory Judgment Act. To establish a "case or controversy", plaintiffs were required to allege injury fairly traceable to defendants' alleged conduct and likely to be redressed by the requested relief." <u>Allen v. Wright</u>, 468 U.S. 737, 751 (1984).

Plaintiffs were also required to allege "'injury in fact' - a harm that is both 'concrete' and 'actual or imminent, not conjectural or hypothetical.'" <u>Vermont Agency of Natural Resources v. United States ex rel. Stevens</u>, 120 S.Ct. 1858, 1861 (2000). Likewise, there must "exist a substantial controversy 'of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" <u>Enrico's Inc. v. Rice, et al.</u>, 730 F.2d 1250, 1255 (9th Cir. 1984).

Plaintiffs contend that their First Amendment rights are violated by the "no parking" signs. However, plaintiffs fail to establish any actual injury regarding the "no parking" signs. Plaintiffs acknowledge that there is parking available across the street from the base. Complaint ¶¶ 12 and 14. Plaintiffs fail to allege that since the placement of the signs, they have been unable to either park near the base, arrange to be driven to the base, or walk to the main gate from where they are able to park. Moreover, there are more than 100 parking spaces available less than 150 yards from the protest areas located near the main gate. Lanning Decl. ¶¶ 11-12. Accordingly, with respect to the "no parking" signs plaintiffs have not established the "case or controversy" requirement essential for jurisdiction in Federal Court or to bring a case under the Declaratory Judgment Act.

6

1     Plaintiffs also contend that their First Amendment rights are
2 violated by the fencing erected by VAFB. The Supreme Court has
3 delineated a three-step process for examining the constitutional
4 protections afforded to private speech on government property.
5 <u>Cornelius v. NAACP Legal Defense & Educational Fund, Inc.</u>, 473 U.S.
6 788, 798 (1985). Under this framework, the Court must determine first
7 whether plaintiffs' proposed message is protected speech. <u>Id</u>. at
8 798.[1] The Court must then analyze the nature of the forum. <u>Id</u>.
9 Finally, the Court must consider defendants' justifications for its
10 restrictions. <u>Id</u>.

11     The Supreme Court has identified three distinct categories of
12 government property: (1) traditional public fora; (2) designated
13 public fora; and (3) nonpublic fora. <u>Perry Educ. Ass'n v. Perry Local</u>
14 <u>Educators' Ass'n</u>, 460 U.S. 37, 45-46 (1983)). In <u>Cornelius v. NAACP</u>,
15 <u>supra</u>, 473 U.S. at 800, the Supreme Court explained that it "has
16 adopted a forum analysis as a means of determining when the
17 government's interest in limiting the use of its property to its
18 intended purpose outweighs the interest of those wishing to use the
19 property for other purposes." Military bases are normally closed, or
20 nonpublic, fora, because "[they] are, by their very nature,
21 traditionally nonpublic and that, in determining whether the military
22 has intended to open up a military base to become a public forum,
23 consideration should be given to the resulting loss of control and
24 entanglement in political controversy that would occur if the military
25 base were held to be a public forum." <u>Brown v. Palmer</u>, 944 F.2d 732,

---

[1] Defendants have acknowledged that plaintiffs engaged in protected speech.

7

738 (10th Cir. 1991) (en banc).

The Supreme Court has also recognized that "[t]he notion that federal military reservations, like municipal streets and parks, have traditionally served as a place for free public assembly and communication of thoughts by private citizens is thus historically and constitutionally false." Greer v. Spock, 424 U.S. 828, 838 (1976). The Court determined that the conclusion that a place becomes a `public forum' for purposes of the First Amendment" "whenever members of the public are permitted freely to visit a place owned or operated by the Government, is mistaken." Id. at 836. As the Court observed, "[s]uch a principle of constitutional law has never existed, and does not exist now." Id.

Other courts have also addressed the issue of categorizing military installations as part of a First Amendment analysis. "Almost without exception, courts have concluded that military bases fall into the non-public forum category." United States v. Douglass, 579 F.2d 545, 549 (9th Cir. 1978) ("Put succinctly, to permit the use of a military base as a public forum is fundamentally incompatible with the purpose of the base."); Shopco Distribution Co. v. Commanding General of Marine Corps Base, Camp Lejeune, 885 F.2d 167, 172 (4th Cir. 1989); M.N.C. of Hinesville, Inc. v. United States Dep't of Defense, 791 F.2d 1466, 1473 (11th Cir.1986) (military base is nonpublic forum); United States v. Albertini, 472 U.S. 675, 686 (1985) (Military bases generally are not public fora).

Plaintiffs allege that the areas in question consist of grassy land and streets adjacent to the entrance to the operational area of the base. However, public access alone does not create a public

forum. "[P]ublicly owned or operated property does not become a 'public forum' simply because members of the public are permitted to come and go at will." <u>International Society for Krishna Consciousness, Inc. v. Lee</u>, 505 U.S. 672, 686, (1992). A road adjacent to a base may be a non-public forum even if the base does not "own" it because it is not open to "unrestricted" public use. <u>Hale v. Department of Energy</u>, 806 F.2d 910, 911-18 (9th Cir. 1986) (rejecting a First Amendment challenge by nuclear weapons protesters to Energy Department regulations governing demonstrations at the Nevada Nuclear Weapons Test Site and holding that the road on the test site property leading to the main guard gate was not a public forum, even though the general public was afforded unrestricted access as far as the guard gate); <u>United States v. McCoy</u>, 866 F.2d 826, 830 (6th Cir. 1989) (A base can ban leafleting in its "driveway.").

Under <u>Cornelius</u>, the Supreme Court has stated that "the government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a non-traditional forum for public discourse." Additionally, as made clear by <u>Greer</u>, even if the public is allowed access to a location owned by the government, that does not mean that it becomes a public forum. <u>Greer</u>, 424 U.S. at 837-838.

VAFB is a nonpublic forum. The Air Force has not abandoned control over speech or other conduct in the area in question. Instead, actions such as erecting fencing, painting the green line, and arresting/citing trespassers, demonstrate that the Air Force has retained control. <u>Hale v. Department of Energy</u>, 806 F.2d 910, 911-18 (9th Cir. 1986); <u>U.S. v. LaValley</u>, 957 F.2d 1309 (6th Cir. 1992) (the

military's grant of an easement to the State to build a roadway does not give individuals the right to protest on grassy areas located on base property). The VAFB fencing was erected as a visual enhancement of the green line which delineates exclusive federal jurisdiction from concurrent jurisdiction areas of VAFB. Lanning Decl. ¶ 14; plaintiffs' responses to defendants' Requests for Admission, Nos. 10-12; plaintiffs' responses to defendants' Interrogatories, No. 18. Entering the area behind the fencing constitutes trespassing onto the exclusive federal jurisdiction of VAFB. Lanning Decl. ¶ 14.

In a nonpublic forum, the government has greater latitude to restrict First Amendment rights. Provided the restriction is reasonable in light of the purpose served by the forum and is not an effort to suppress expression merely because public officials oppose the speaker's view, it does not violate the First Amendment. Hawkins v. City of Denver, 170 F.3d 1281, 1287 (10th Cir. 1999). Thus, military officials need not first determine actual harm has occurred before imposing reasonable restrictions, nor does the First Amendment demand unrestricted access to a nonpublic forum merely because use of that forum may be a more efficient way of delivering the speaker's message. Cornelius, supra, 473 U.S. at 809; Hawkins, supra, 170 F.3d at 1292, n.7. Military officials need not demonstrate actual harm before implementing a regulation and may act to forestall reasonably anticipated harm to the orderly functioning of the base. Persons for Free Speech at SAC v. United States Air Force, 675 F.2d 1010, 1020 (8th Cir.) (en banc) (holding that deference must be afforded to the reasonable judgments of base commanders). For a court to uphold First Amendment restrictions as reasonable, it need not be the most

reasonable or the only reasonable limitation. <u>Int'l Society For Krishna Consciousness, Inc. v. Lee</u>, 505 U.S. 672 (1992).

The restriction is reasonable in light of the purpose served by VAFB and the reasons for the erection of the fencing. Protests have not been outlawed by a statute or prohibited by the base. The restriction is designed to protect military interests, including preserving good order and maintaining security of the primary entrance to the base. <u>Cox v. New Hampshire</u>, 312 U.S. 569 (1941) (legitimacy of preserving the flow of traffic in the area). The decision to erect the fencing was made by the Installation Commander to assist in preventing trespassing which constitutes a threat to the security of the base and its mission. Lanning Decl. ¶ 14.

The fencing is neutral as to content or viewpoint. The fencing restrictions would prevent pro-Air Force demonstrators from assembling in the same areas and to the same extent as they prevent anti-Air Force demonstrators. Thus, without a showing of discrimination based on content, plaintiffs have not stated any injury of constitutional dimensions. It follows that plaintiffs' conduct, even though perhaps `intertwined with expression and association,' can be barred from the [ ] base. It enjoys no First Amendment immunity from such a ban." <u>Douglass</u>, <u>supra</u>, quoting from <u>Cox v. Louisiana</u>, 379 U.S. 536, 563 (1965).

Plaintiffs contend that summary judgment is inappropriate because there is allegedly a disputed material issue of fact regarding the location of the green line which delineates concurrent and exclusive jurisdiction. However, plaintiffs admit in discovery responses that the existing green line marks the delineation between concurrent and

11

1  exclusive jurisdiction and that the fencing erected over the green
2  line served as a visual delineation of exclusive federal jurisdiction.
3  Plaintiffs' responses to defendants' Requests for Admission, Nos. 10-
4  12; plaintiffs' responses to defendants' Interrogatories, No. 18.

5      Any matter admitted in response to a request for admission is
6  conclusively established unless the court on motion permits withdrawal
7  or amendment of the admission. Fed.R.Civ.P. 36; Fed.R.Civ.P. 56(c)
8  (acknowledging the binding effect of Rule 36 admissions by permitting
9  a court to grant summary judgment based on, *inter alia*, the
10 "admissions on file"). Plaintiffs did not file a motion to withdraw
11 or amend their discovery responses. Accordingly, they are bound by
12 their admissions and have not established a genuine issue of material
13 fact.

14     Any conclusions of law erroneously designated as an
15 Uncontroverted fact is incorporated herein.

16 DATED: March 12, 2003      *RONALD S W LEW*

17
                               RONALD S.W. LEW
18                                UNITED STATES DISTRICT JUDGE

19
20 PRESENTED BY:

21 DEBRA W. YANG
   United States Attorney
   LEON W. WEIDMAN
22 Assistant United States Attorney
   Chief, Civil Division
23
24 _____
   GWENDOLYN M. GAMBLE
25 Assistant United States Attorney

26

27

28                               12

PROOF OF SERVICE BY MAILING

I am over the age of 18 and not a party to the within action. I am employed by the Office of United States Attorney, Central District of California. My business address is 300 North Los Angeles Street, Suite 7516, Los Angeles, California 90012.

On March 4, 2003 I served the foregoing: **AMENDED STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**, on each person or entity named below by enclosing a copy in an envelope addressed as shown below and placing the envelope for collection and mailing on the date and at the place shown below following our ordinary office practices. I am readily familiar with the practice of this office for collection and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

Date of mailing: March 4, 2003. Place of mailing: LOS ANGELES, CALIFORNIA.

**Person(s) and/or Entity(ies) to Whom mailed:**

Richard C. Solomon
Zimmer & Marcus, LLP
2640 Las Encinas Lane
Santa Barbara, CA 93105-2923

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on: March 4, 2003 at Los Angeles, California.

MARICELA CORTEZ